UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JAMES UIHLEIN, an individual,

    Plaintiff,

vs.

DAVID HOWARD FENLEY, an individual, in his personal capacity and in his representative capacity as trustee for the David Howard Fenley Living Trust.

    Defendant.

Case No.

Hon.

**VERIFIED COMPLAINT AND JURY DEMAND**

Plaintiff James Uihlein, by and through his attorneys, Foley & Lardner LLP, alleges as follows for his Complaint against Defendant:

## PARTIES AND JURISDICTION

1. Plaintiff, James Uihlein ("Plaintiff" or "Uihlein"), is an individual residing and domiciled in Florida.

2. Defendant, David Howard Fenley ("Defendant" or "Fenley"), is an individual residing in Kentucky. Upon information and belief, Fenley administers the David Howard Fenley Living Trust (the "Trust"), an *inter-vivos* trust, from his domicile at 3609 Glenview Ave, Glenview, Kentucky 40025.

3. Plaintiff asserts his claims against Defendant both in Defendant's personal capacity, and in Defendant's representative capacity as trustee of the Trust.

4. This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332. The matter in controversy is between citizens of different states. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Defendant is subject to personal jurisdiction in this judicial district because the real property that is subject to this action is located in Gogebic County, Michigan and because Defendant purposefully directed his conduct, both as an individual and in his representative capacity as trustee, towards Gogebic County, Michigan.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims asserted in this action arose in this judicial district.

## GENERAL ALLEGATIONS

7. On March 4, 2025, Defendant entered into a Michigan Realtors Exclusive Listing

1

Contract (the "Listing Contract", attached hereto at **Exhibit A**) with real estate brokerage Eliason Realty of the North ("Eliason Realty").

8. Pursuant to the Listing Contract, Defendant offered to sell the real property at issue held by the Trust and identified in the Listing Contract located at 19055 Fish Hawk Lake Road, Watersmeet, Michigan 49969 (the "Property") for $2,700,000.00. *Id*.

9. The Listing Contract designates John Sarama as Defendant's listing agent on behalf of Eliason Realty.

10. Section 5 of the Listing Contract provides that Defendant agreed to pay Eliason Realty a commission on the sale equaling 2.5% of the Property's sale price. *Id*.

11. Thereafter, Plaintiff inquired with Eliason Realty about purchasing the Property. On August 4, 2025, Eliason Realty issued a Disclosure Regarding Real Estate Agency Relationships to Plaintiff (the "Disclosure", attached hereto at **Exhibit B**) advising that Eliason Realty was serving only as the Defendant's agent with respect to the transaction. Plaintiff acknowledged the Disclosure.

12. On August 5, 2025, the Parties entered into a Michigan Realtors Purchase Agreement (the "Purchase Agreement", attached hereto at **Exhibit C**). Pursuant to the Purchase Agreement, Plaintiff agreed to purchase and the Trust agreed to sell the Property for a $2,650,000.00 purchase price.

13. Section 3 of the Purchase Agreement provides that Seller shall pay a commission of 2.5% of the purchase price to the Eliason Realty at the time of closing. *Id*.

14. Section 34 of the Purchase Agreement expressly designates Eliason Realty and Mr. Sarama as Defendant's sole broker and listing agent, respectively.

15. The Agreement required the parties to close on the sale of the Property on or before

September 1, 2025 (the "Closing Date").

16. In advance of the Closing Date, Plaintiff transferred a $50,000.00 earnest money deposit (the "Deposit") to Eliason Realty's trust account.

17. On August 21, 2025, Mr. Sarama sent a text message to Plaintiff (attached hereto at **Exhibit D**) proposing, on behalf of Defendant, that Defendant would pay Plaintiff $100,000 if Plaintiff would agree to void the Purchase Agreement. Plaintiff declined Defendant's offer and advised that Plaintiff intended to purchase the Property pursuant to the parties' Purchase Agreement.

18. Defendant directed its agent to represent to Plaintiff that, after Defendant had again visited the Property, Defendant developed seller's remorse and no longer wanted to sell the Property. On August 25, 2025, Defendant's agent once again on behalf of Defendant contacted Plaintiff requesting that Plaintiff void the Purchase Agreement for a cash payment and requesting Plaintiff to "name your price" in order to void the Purchase Agreement.

19. Plaintiff declined Defendant's August 25, 2025 invitation to void the Purchase Agreement and reiterated that Plaintiff intended to purchase the Property pursuant to the parties' Purchase Agreement.

20. Defendant's agent represented that Defendant was proceeding with the closing of the sale, and Plaintiff proceeded to transfer the balance of the purchase price, $2,600,000.00, to Eliason Realty's trust account in satisfaction of the balance of the Property's purchase price (together with the Deposit, the "Purchase Funds").

21. The closing was scheduled for August 28, 2025, in advance of the closing deadline of September 1, 2025. In advance of the closing, Plaintiff received a package of closing documents. These closing documents contained a buyer's settlement statement, but did not include a seller's

3

settlement statement. Because the commission paid by the seller is only identified on the seller's closing statement, Plaintiff was not provided with a statement of the commission to be paid at closing by Defendant to its broker. (**Exhibit E**, Closing Statement). Plaintiff traveled from out of state to Michigan to appear at the closing of the sale of the Property and to execute the closing documents.

22. It was only after Plaintiff traveled to Michigan for the closing that Defendant's agent informed Plaintiff that Defendant was not prepared to close the sale of the Property.

23. Defendant's agent subsequently informed Plaintiff that he was unsure whether Defendant intended to execute the documentation required to close on the sale of the Property.

24. On September 5, 2025, counsel for Plaintiff contacted Defendant demanding that Defendant complete the closing of the transaction. After Defendant failed to respond, counsel for Plaintiff made a second demand on September 10, 2025.

25. In response, Defendant represented to Plaintiff that the Purchase Agreement was void on the basis of a dual agency by Defendant's agent.

26. On September 12, 2025, Defendant forwarded to Plaintiff an email dated August 27, 2025, from Defendant to his agent in which Defendant vaguely accused its agent of having a "dual agency" and claimed to void the Purchase Agreement (attached hereto at **Exhibit F**). Plaintiff had no prior notice of this claim by Defendant.

27. Subsequently, Eliason Realty disclosed, again previously unbeknownst to Plaintiff, that on August 12, 2025, after entering into the Purchase Agreement with Plaintiff, Defendant had received and accepted from another party an offer to purchase the Property at a price that was $300,000 higher than the price at which Defendant had agreed to sell the Property to Plaintiff.

28. On September 18, 2025, Plaintiff received a copy of a purchase agreement dated

4

August 12, 2025, providing that Defendant agreed to sell the Property to a third party for a price of $2,950,000 (the "Third-Party Agreement", attached hereto at **Exhibit G** at Sec. 35(b)).

29. Like the Purchase Agreement, Section 3 of the Third-Party Agreement also provides that Seller shall pay a commission of 2.5% of the purchase price to the selling brokerage at the time of closing. *Id.*

30. Defendant's agent disclosed on September 18, 2025, a letter from the agent to Defendant dated August 28,2025, in which the agent denied any dual agency and demanded the facts on which Defendant based the allegation contained in Defendant's August 27, 2025, email. According to Defendant's agent, Defendant did not respond to the agent's demand.

31. Defendant remains unwilling to effectuate the sale and transfer of the Property to Plaintiff.

32. Defendant retains possession of the Property and the Purchase Funds.

## COUNT I – BREACH OF CONTRACT

33. Plaintiff repeats and incorporates the allegations contained in the preceding paragraphs as set forth below.

34. Plaintiff and Defendant entered into the Purchase Agreement, which is a valid and enforceable contract.

35. Plaintiff performed its obligations under the Purchase Agreement in all material respects.

36. Defendant breached the Purchase Agreement by, among other things:

    A. Failing to execute the closing documents required to close on the sale of the Property; and

    B. Refusing to transfer the Property to Plaintiff.

37. As a result of Defendant's breaches, Plaintiff has suffered and continues to suffer

damages, including but not limited to, damages from the loss of use of the Property and the costs Plaintiff incurred to effectuate the Property's sale, including but not limited to travel and other related costs.

## **COUNT II – INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE**

38. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though set forth separately herein.

39. Defendant has materially breached his obligations under the Agreement by refusing to effectuate the sale and transfer of the Property to Plaintiff.

40. The Property is unique real property not obtainable from another source.

41. Plaintiff does not have an adequate remedy at law to rectify Defendant's improper refusal to effectuate the sale and transfer of the Property to Plaintiff.

42. Plaintiff will suffer irreparable harm absent judicial relief compelling Defendant to effectuate the sale and transfer of the Property to Plaintiff.

## **COUNT III – COMMON LAW CONVERSION**

43. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though set forth separately herein.

44. Plaintiff asserts this count in the alternative to Count I and Count II, including in the event it is determined that Plaintiff is not entitled to purchase the Property.

45. Defendant's agents have retained the Purchase Funds.

46. The Purchase Funds constitutes a specific fund or set of funds.

47. Defendant through and in concert with their agent has wrongfully exerted dominion over the Purchase Funds by improperly retaining the Purchase Funds without authorization and for its own benefit.

48. Defendant's improper actions were inconsistent with Plaintiff's possession rights.

49. In retaining the Purchase Funds without authorization and for their own benefit, Defendant committed common law conversion.

50. As a direct and proximate result of Defendant's improper acts of conversion, Plaintiff has incurred and is entitled to damages.

### COUNT IV – STATUTORY CONVERSION

51. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though set forth separately herein.

52. Plaintiff asserts this count in the alternative to Count I and Count II, including in the event it is determined that Plaintiff is not entitled to purchase the Property.

53. Defendant has exerted dominion over the Purchase Funds.

54. Defendant's agents have retained the Purchase Funds.

55. The Purchase Funds constitutes a specific fund or set of funds.

56. Defendant has through and in concert with its agent wrongfully exerted dominion over the Purchase Funds by improperly retaining the Purchase Funds for its own benefit.

57. Defendant's improper actions were inconsistent with Plaintiff's rights.

58. Defendant is liable for conversion pursuant to MCL § 600.2919a.

59. As a direct and proximate result of Defendant's improper acts of conversion, Plaintiff has incurred and is entitled to damages.

60. Plaintiff is entitled to recover treble damages and attorneys' fees pursuant to MCL § 600.2919a.

### COUNT V – FRAUD

61. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though set forth separately herein.

62. Defendant made and/or directed material misstatements to Plaintiff to conceal Defendant's scheme to void the parties' Purchase Agreement and to sell the Property to another buyer, including but not limited to, the following false statements to Plaintiff:

    A) Represented that Defendant no longer desired to sell the Property and therefore requested that Plaintiff agree to void the Purchase Agreement;

    B) After Plaintiff declined to void the Purchase Agreement, represented that Defendant would be closing the transaction and that Plaintiff transfer funds for the Purchase Price to Defendant's agent and appear at the closing;

    C) After Defendant refused to close the transaction, represented to Plaintiff that the Purchase Agreement was void and that, as a result, Defendant is not obligated to sell the property to Plaintiff; and

    D) Concealed to Plaintiff that Defendant had entered into the Third Party Agreement pursuant to which Defendant agreed to sell the Property to another purchaser.

63. The aforementioned statements were false, material facts were concealed, and representations and omissions were made or concealed with false pretenses.

64. Defendant knew the aforementioned statements were false when made and omissions were required to be disclosed, and such conduct was otherwise in bad faith.

65. Defendant intended for Plaintiff to act on the representations and omissions.

66. Plaintiff reasonably relied on the aforementioned statements and omissions, and among other things, transferred funds and traveled to Michigan to close on the sale of the Property.

67. Defendant fraudulently omitted that, as of August 12, 2025, Defendant agreed to

sell the Property to another purchaser.

68. Defendant had a duty to disclose, among other things, that Defendant had agreed in the Third Party Agreement to sell the Property to another purchaser, offered to pay Plaintiff to void the Purchase Agreement not because Defendant no longer wanted to part with the Property but because Defendant entered into the Third Party Agreement, had void the Purchase Agreement under false pretenses after Plaintiff declined to void the Purchase Agreement in exchange for a cash payment, and would not execute the closing documents.

69. As a proximate result of Defendant's fraudulent statements and omissions, Plaintiff has suffered injury and damages.

70. As a proximate result of Defendant's fraudulent statements and omissions, Plaintiff will also suffer irreparable harm absent judicial relief compelling Defendant to effectuate the sale and transfer of the Property to Plaintiff.

## COUNT VI – DECLARATORY JUDGMENT

71. Plaintiff restates and incorporates the allegations contained in the preceding paragraphs as though set forth separately herein.

72. Plaintiff is an interested party seeking this declaratory judgment. The matter is ripe for adjudication.

73. An actual controversy within this jurisdiction exists between Plaintiff and Defendant regarding Defendant's intent to sell the Property to another purchaser in violation of the Parties' agreement.

74. Pursuant to 28 U.S.C. § 2201(a), Plaintiff requests that the Court enter a declaratory judgment and preliminary injunction setting forth that Defendant is required to transfer the Property to Plaintiff. Plaintiff requests a declaratory judgment and preliminary injunction barring

Defendant from taking any further steps to sell or otherwise transfer its interest in the Property to a non-party purchaser.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, and against Defendant, awarding Plaintiff:

A. Actual damages in an amount not less than $75,000, exclusive of interest, costs and attorney fees;

B. Specific performance compelling Defendant to effectuate the transfer of the Property to Plaintiff;

C. Treble damages;

D. Attorneys' fees and costs;

E. Prejudgment and post judgment interest; and/or

F. Any additional relief to which Plaintiff is entitled.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**FOLEY & LARDNER LLP**

*/s/ William Kalas*
Mark A. Aiello (P43012)
William Kalas (P82113)
500 Woodward Avenue, Suite 2700
Detroit, Michigan 48226
(313) 234-7100
maeillo@foley.com
wkalas@foley.com

*Attorneys for Plaintiff*

Dated: October 7, 2025

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JAMES UIHLEIN, an individual,

    Plaintiff,

vs.

DAVID HOWARD FENLEY, an individual, in his personal capacity and in his representative capacity as trustee for the David Howard Fenley Living Trust.

    Defendant.

Case No.

Hon.

## DECLARATION OF JAMES UIHLEIN IN SUPPORT OF PLAINTIFF'S VERIFIED COMPLAINT AND JURY DEMAND

    I, James Uihlein, am over the age of eighteen years, of sound mind and am competent to testify as to the matters contained herein. I make this declaration pursuant to 28 U.S.C. § 1746, and in support of Plaintiff's Verified Complaint and Jury Demand (the "Complaint"). I have read the foregoing Complaint, know the factual contents thereof, and hereby declare that such facts are true to the best of my personal knowledge, information and belief.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 6, 2025

_____
James Uihlein

1